IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDY A.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 1:22-cv-01657-HZ

OPINION & ORDER

John E. Haapala, Jr.
401 E. 10th Ave., Ste. 240
Eugene, OR 97401

    Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Sathya Oum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Judy A. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on March 10, 2020, alleging an onset date of February 20, 2020. Tr. 96.[2] Plaintiff later amended her alleged onset date to July 1, 2020. Tr. 38. Plaintiff's date last insured ("DLI") is December 31, 2025. Tr. 16. Her application was denied initially and on reconsideration. Tr. 110, 125, 148, 168.

On September 16, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 30-59. On September 29, 2021, the ALJ found Plaintiff not disabled. Tr. 14-24. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on heart condition, cerebellar stroke, fibromyalgia, memory issue, poor balance, chronic pain, arthritis, hand numbness, rheumatoid arthritis, right knee pain, anxiety, Reynaud's syndrome, blurry vision, herniated discs, muscle spasms, shoulder

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

problems, depression, and right arm bursitis. Tr. 335. At the time of her alleged onset date, she was 47 years old. Tr. 96. She has a high school diploma and past relevant work experience as nurse assistant. Tr. 23, 336.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. See *Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

3 – OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date. Tr. 16. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia, osteoarthritis, degenerative disc disease, obesity, and history of cerebral vascular accident with residuals." Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Tr. 19. The ALJ found that Plaintiff could perform her past relevant work as a nurse assistant. Tr. 23. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 23.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

4 – OPINION & ORDER

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to provide clear and convincing reasons for discounting her subjective symptom testimony and (2) finding unpersuasive the medical opinions of Dr. David Dryland.

### I. Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that she cannot work due to memory issues, pain, and weakness. Tr. 41–50. Plaintiff stated that she has a short concentration span, that she gets tired and overwhelmed easily, and that she is often foggy-headed. Tr. 354. Plaintiff stated that the pain and weakness affect her balance and vision and that she often gets dizzy. Tr. 359. Plaintiff also stated that she feels anxiety around large groups of people and that she does not get along well with authority figures. Tr. 359.

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20. The ALJ gave five reasons for discounting Plaintiff's subjective symptom testimony: (1) inconsistency with the objective medical evidence; (2) Plaintiff's own

inconsistent statements; (3) conservative treatment; (4) improvement with treatment; and (5) inconsistency with Plaintiff's activities of daily living. Tr. 20–21.

First, the ALJ noted that "while there is objective medical evidence documenting [Plaintiff's] impairments, findings and examination results are generally mild, normal, and/or unremarkable." Tr. 21. Although the absence of corroborating medical findings is insufficient, on its own, to discount a plaintiff's subjective symptom testimony, consistency with the medical evidence is a relevant consideration. *Lingenfelter*, 504 F.3d at 1040. Plaintiff consistently presented at medical appointments alert and oriented, with normal speech and thought content. Tr. 798, 807, 823, 1034, 1043, 1177, 1078. Providers noted that Plaintiff had good attention and concentration and that her short- and long-term memory was intact. Tr. 807, 823, 1034, 1038, 1043, 1078. Although Plaintiff had generalized pain all over her body, her motor tone and strength were normal. Tr. 807, 823, 1177. The ALJ's finding here is supported by substantial evidence.

The ALJ also relied heavily on Plaintiff's own inconsistent statements. Following her stroke, Plaintiff repeatedly asked her neurologist for a letter releasing her to return to work at her previous job. Tr. 802, 803. Dr. Ranawat agreed to sign the work release letter and sent it to Plaintiff in September 2020. Tr. 803. Plaintiff also asked her primary care provider to clear her to return to work. Tr. 1071. Dr. Belafsky found that Plaintiff was stable to return to work. Tr. 1072. The ALJ found "[i]t makes little sense that claimant would repeatedly ask her doctor for a letter allowing her to return to her past work if she did not feel she were capable of performing it." Tr. 21. The ALJ's finding here is also supported by substantial evidence.

The ALJ found that Plaintiff's "[t]reatment has been generally conservative, consisting of medications, physical therapy, and acupuncture." Tr. 21. Although Plaintiff's fibromyalgia is

7 – OPINION & ORDER

severe, she repeatedly declined medication for it. Tr. 1079. In March 2021, Plaintiff requested a referral to a pain clinic, but stated that she did not want interventional procedures or prescription medications. Tr. 1086. Her doctor recommended an anti-inflammatory diet, turmeric, and arnica. Tr. 1087. Similarly, Plaintiff has chosen not to engage in mental health treatment and does not take any medications for her anxiety. Tr. 1083. Plaintiff reported to her primary care provider that she "feels mostly able to deal with [her anxiety] on her own." Tr. 1083. Following her stroke, Plaintiff was evaluated for physical therapy and occupational therapy in April 2020. Tr. 826–35. Although Plaintiff was exhibiting some fatigue, weakness, and dizziness, occupational therapy was not recommended because she was independent in her activities of daily living. Tr. 833. Plaintiff only attended one physical therapy session after the initial evaluation; she then asked to be discharged because she was walking well and wanted to focus on other issues, such as her anxiety, at that time. Tr. 829. The ALJ's finding here is supported by substantial evidence.

To the extent that the ALJ relied on Plaintiff's improvement with treatment and her activities of daily living, the Court finds these are not clear and convincing reasons to discount Plaintiff's subjective symptom testimony. As the ALJ noted, Plaintiff's relief from acupuncture was temporary – Plaintiff's pain returned the following day. Tr. 1171. The ALJ also does not explain how Plaintiff's activities of daily living undermine her testimony. However, because the ALJ provided three other clear and convincing reasons, each supported by substantial evidence, the Court upholds the ALJ's finding here.

II.     **Medical Opinions of David Dryland, MD**

For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

8 – OPINION & ORDER

C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Dryland, Plaintiff's rheumatologist, provided two medical source statements, on December 6, 2020 and on July 20, 2021. Tr. 785–89, 1026–30. Dr. Dryland noted Plaintiff's diagnoses as osteoarthritis and fibromyalgia, with a poor prognosis. Tr. 785, 1026. Plaintiff's symptoms included severe pain, fatigue, and decreased concentration and memory. Tr. 785, 1026. In December 2020, Dr. Dryland opined that Plaintiff could walk for one to two blocks, sit for 30 to 45 minutes, and stand for 20 to 30 minutes. Tr. 786. He opined that Plaintiff could sit for less than two hours total in an eight-hour workday and could stand or walk for less than two

9 – OPINION & ORDER

hours total in an eight-hour workday. Tr. 786. Dr. Dryland further opined that Plaintiff would need unscheduled breaks and that she had limitations with reaching, handling, and fingering due to severe neck arthritis. Tr. 787–88. He opined that Plaintiff would be off task for more than 25% of a workday and would be absent four or more days a month. Tr. 788. Dr. Dryland's July 2021 opinion contained even more extreme limitations. He noted that Plaintiff had reduced grip strength and abnormal gait and posture. Tr. 1026. Dr. Dryland opined that Plaintiff could walk one to two blocks, could sit for 10 to 15 minutes, and could stand for 5 to 10 minutes. Tr. 1026. Dr. Dryland noted that these additional limitations were due to Plaintiff's history of stroke, leading to poor balance and falls. Tr. 1029. However, while Dr. Dryland opined that Plaintiff would need unscheduled breaks and would need to elevate her legs, any follow-up questions were answered with large question marks. Tr. 1028.

The ALJ found these opinions unpersuasive. Tr. 22. Addressing supportability, the ALJ noted that "Dr. Dryland provided very little explanation for his conclusions. For example, he found no muscle weakness, reduced grip strength, or joint instability, yet limited the claimant to less than sedentary exertion work." Tr. 22. The ALJ also found Dr. Dryland's opinion inconsistent with the medical evidence, including his own examinations. Tr. 22. When Plaintiff first saw Dr. Dryland in March 2020, she presented with normal gait, good stability, and normal range of motion and strength. Tr. 656. As the ALJ noted, additional physical exams showed that Plaintiff had 5/5 strength in all extremities with normal muscle bulk and tone. Tr. 807, 823, 1177. Although Plaintiff's gait is slow, providers noted no clear unsteadiness. Tr. 675, 1034, 1038, 1043. The ALJ's finding here is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:_____December 28, 2023__.

_____
MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER